# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

May 13, 2021

**BY ECF**

Hon. Edgardo Ramos, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     **Re:** ***Mateos v. SNZ Group Inc., et al.,***
       <u>*Case No. 18-CV-11894 (ER)*</u>

Dear Judge Ramos,

  We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with counsel for defendants M&S Market 2350 LLC, Sahib Singh, and Manjit Singh (the "Settling Defendants") seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties.[1] The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

  **I.** ***The Need for the Court's Approval of the Agreement***

  As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised

---

[1] Defendants SNZ Group Inc., Muhammad Islam, and Enrique Ceron-Casarez have not appeared in the action and are not a part of this settlement. Simultaneously with the filing of the Agreement, plaintiff has filed a Notice of Voluntary Dismissal as to his claims against the non-appearing defendants as the restaurant has ceased operations and the whereabouts of the non-appearing defendants are unknown.

stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II.  *Plaintiff's Claim for Unpaid Wages*

Plaintiff alleges that he was hired to work at the defendants' restaurant, doing business as Café 86, in or about September 2013 to work as a non-exempt dishwasher and, subsequently as a kitchen helper/food preparer. The Settling Defendants were the prior owners of the restaurant, which was transferred to the non-appearing corporate defendant, SNZ Group, sometime in or about late 2016. Plaintiff worked continuously in those capacities at the restaurant until on or about October 10, 2018.

Plaintiff alleges the following with respect to his work hours and pay:

- September 2013 – December 2016: Fifty-Four (54) hours per week
- January 2017 – October 10, 2018: Seventy-Eight (78) hours per week

- September 2013 – December 2013: $385 per week
- January 2014 – December 2016: $425 per week
- January 2017 – October 10, 2018: $575 per week

Based on the foregoing, plaintiff calculated that he is owed approximately $120,000 in underlying unpaid wages and "spread of hours" premium, of which the Settling Defendants are believed to be responsible for approximately $38,000. A copy of plaintiff's damages spreadsheet is attached hereto, which demonstrates how plaintiff calculated his estimated damages.

## III.  *Settling Defendants' Contested Facts and Alleged Financial Hardship*

The Settling Defendants contend that plaintiff's allegations as to his work hours are greatly exaggerated, and that any overtime worked was minimal. Perhaps more critical, was and continues to be the Settling Defendants' strained financial condition. Prior to the sale of the business to SNZ Group, the Settling Defendants were in arrears on their commercial rental obligations in the amount of almost $80,000, as well as to numerous vendors. Moreover, the individual defendants have no collectible assets, and failed to even receive the full sale price of the business from SNZ Group back in 2016. In short, the Settling Defendants simply cannot afford to offer a more significant settlement amount or to engage in protracted litigation. If forced to have done so, they would almost certainly would have filed for bankruptcy protection.

## IV.  *The Settlement*

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $20,000 to resolve all of plaintiff's wage and hour claims against the Settling Defendants, payable in

seven (7) installments commencing within twenty (20) days of the Court's approval of the Agreement and dismissal of the case.

### V.     The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as through multiple mediation sessions before Anthony DiCaprio, Esq. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

Moreover, as discussed *supra*, a significant concern tending toward settlement was plaintiff's legitimate apprehension about the collectability of an unsatisfied judgment against the Settling Defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns). There is always risk that a defendant will have no collectable assets for this uninsured claim. This is especially true here as the Settling Defendants would not be able to withstand a larger settlement or judgment. Settling Defendants operated a small neighborhood restaurant with limited financial resources, which they no longer operate or control.

In light of the dispute concerning plaintiff's claims, as well the risk of ongoing litigation, this settlement should be approved. By settling now, plaintiff receives some of his underlying unpaid wages even after attorneys' fees and costs are deducted, while enabling the parties to avoid the risks inherent in protracted litigation and trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff during mediation, he made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

Hon. Edgardo Ramos, U.S.D.J.
May 13, 2021
Page 4

### VI.   Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiff, our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[2]  Therefore, counsel seeks $6,376.36 in fees, and $869 in costs, for a total fee application of $7,245.36.

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees. Additionally, as stated above, plaintiff is being made whole even after fees and costs are deducted.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage method" in this District, "particularly where it is pursuant to a previously negotiated retainer agreement." *See Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15 Civ. 2950, 2018 U.S. Dist. LEXIS 110266, at *15-16 (S.D.N.Y. July 2, 2018) (citations omitted); *Daniels v. Haddad*, 17 Civ. 8067, 2018 U.S. Dist. LEXIS 212861, at *2-3 (S.D.N.Y. Dec. 17, 2018). Here, plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with his wage-and-hour claims.

If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is more than the fees requested herein. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegal) have repeatedly been approved as reasonable. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016). Attached hereto is a copy of Cilenti & Cooper, PLLC's billing records for work performed on this matter.

For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

---

[2] The firm's expenses total $869 consisting of the filing fee to commence the action ($400), and service of process ($469).

Hon. Edgardo Ramos, U.S.D.J.
May 13, 2021
Page 5

                                                      Respectfully submitted,

                                                     Justin Cilenti

Enclosures

cc: Stephen D. Hans, Esq. (by ECF)